SOMMERYILLE, J.
At an election in the city of Shreveport, among various propositions submitted to the people was one to impose a tax and to issue bonds for the resurfacing of certain streets.
John F. Wise, individually, and as proxy for several others, and Felix Weiller, who were opposed to the tax and bond issue, incorrectly wrote the amounts of their assessments on the ballots voted by them. Their votes were counted by the election commissioners, who, however, reduced the amounts of their respective assessments as shown on the tickets to the true amounts of the assess *69 ments as shown on the list taken from the assessment rolls, which list was furnished the election commissioners by the assessor at the same time and together with the boxes, tickets, and other paraphernalia for holding the election.
The next day, when the city council met to count the ballots, tabulate the returns, and promulgate the result of the election, the council counted these ballots as the commissioners had done. The election failed to carry.
Had the ballots of Wise, individually and as proxy, and of Felix Weiller been thrown out and not counted, the proposition to resurface the streets would have been carried, both in number and amount of assessment of those voting.
This suit was instituted by relators, taxpayers favoring the improvement and tax, to mandamus the city council to reassemble and recount the votes, and to reject and omit from the count the votes of Wise and Weiller as having been improperly cast. John F. Wise intervened in the suit as party defendant. He denied that he had fraudulently misstated his assessment, but that the misstatement was an error.
The answer of the respondents city commissioners admits the facts alleged by relat- or, except as to the alleged fraud, as to which they allege that it was not their province to determine; and they do not say whether such erroneous assessments appearing on the tickets were so written intentionally or by mistake. They aver that they are without jurisdiction to determine such questions, and that they properly counted the ballots on the true assessments, which the election commissioners had previously done. Respondents further “deny the right of relators to contest said election by mandamus proceeding.” The intervener also objected to the form of procedure.
There was judgment in the district court dismissing relators’ demand on the ground that their remedy was by suit contesting the election, and not by mandamus. The relators have appealed.
The Constitution of the state provides that the General Assembly shall have power to enact general laws authorizing the parochial, ward, and municipal authorities of the state, by a vote of the majority of the property taxpayers in number entitled to vote under the .provisions-of the Constitution and in value, to levy special taxes in aid of public improvements, etc. (article 270). This article is similar to article 242 of the Constitution of 1879, under which the General Assembly passed an act to provide for contesting elections held for the purpose just referred to. In said act it is provided that suits brought to contest an election, as aforesaid, shall commence by petition, which shall be served in the manner provided by law on the police jury, or other body or authority holding such election under the aforesaid article of the Constitution of 1879 and laws to carry same into effect; and any suit under the provisions of this act shall be brought within three months after the promulgation of the result of the election contested. Act 106 of 1892.
And in section 17 of Act No. 256 of 1910, p. 432, a similar provision is found. It reads:
“That, for a period of sixty days from the date of the promulgation of the result of any such election, any person in interest shall have the right to contest the legality of such election for any cause, after which time no one shall have any cause of action to contes: the regularity, formality, or legality of said election for any cause whatever. If the validity of any election held under the provisions of this act is not raised within the sixty days herein prescribed, then no governing authority of any subdivision herein named, required to levy a tax or issue bonds as authorized at an election or under this act, shall be permitted to refuse to perform that duty and urge as an excuse or reason therefor, that some provision of the Constitution or law of Louisiana has not been complied with, but it shall be conclusively presumed that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of sixty days as herein provided.”
*71 The foregoing are the only provisions of law, to which we have been referred, which confer jurisdiction upon the courts to decide contested election cases like the one under consideration. And it is quite clear that the ordinary form of procedure is the only one referred to, and that the right to a writ of mandamus is not given to “any .person in interest in the premises.” The law, having provided the ordinary means of court procedure, cannot be disregarded, and another form substituted therefor, except in exceptional cases. And this suit is not such.
A mandamus cannot issue in this case under' the textual provisions of the Code. The Legislature clearly considered the slowness of the ordinary legal form by fixing a period of 60 days from the date of the promulgation of the result of any election in which suits of contest might he brought. The writ of mandamus is ordinarily issued to compel the performance of some certain act belonging to the place, duty, or quality with which it is clothed (Code of Practice, art. 829); in other words, purely ministerial duties. In the present instance the duties of the city commissioners of the pity of Shreveport, as defined in section 15 of the act under consideration, No. 256, 1910, p. 431, are not merely ministerial. Said commissioners are not constituted or appointed to promulgate the returns only. That section of law confers other duties upon them, as follows:
“That on the day and at the hour and place named in the notice ordering such election, the authorities under whose orders such election has been held, shall, in public session, proceed to open the ballot boxes, examine and count the ballots in number and amount, examine and canvass the returns and declare the results of such election, which result they shall thereafter promulgate by publication in one issue of the ofiicial journal, or other newspaper of the parish, where there is no official journal or by posting where no newspaper is published. The authority ordering the election shall keep a procés verbal of the manner in which the ballot boxes have been opened, the returns canvassed and the result of the election ascertained and shall forward a copy of said procés verbal to the secretary of state, who shall record the same, another copy to the clerk of the district court who shall also record said copy in the mortgage records of the parish, and the remaining copy shall be retained in the archives of the office of the authority ordering the election.”
Thus it is seen that the city commissioners are required to open the ballot boxes, examine and count the ballots in number and amount, and examine and canvass the returns and declare the result of the election; and the court is without authority to interfere with them, and to mandamus them to reject the votes complained of in relators’ petition, as a mere ministerial duty on their part.
Relators might have contested the election by the ordinary process in court within 60 days after the promulgation of the returns, and have asked that the city commissioners of the city of Shreveport be ordered to reconvene for the purpose of counting the ballots, etc., to make a procés verbal, declare the result of the election, and to promulgate the same. But they have failed to avail themselves of the method of doing so in the manner provided in the statute.
•Judgment affirmed.